## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| WILLIAM SULLIVAN, as trustee of the WILLIAM SULLIVAN TRUST 99, an Illinois Trust,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MERRIMACK MUTUAL FIRE INSURANCE CO., a Massachusetts Company.<br><br>　　　　　　Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) )　Case No.: 18-cv-5655 |

## COMPLAINT FOR
## DECLARATORY JUDGMENT AND DAMAGES

Plaintiff, WILLIAM SULLIVAN, as trustee of the WILLIAM SULLIVAN TRUST 99 ("WST" or "Plaintiff"), by and through his attorneys, Steven M. Laduzinsky and Conor Sickel of Laduzinsky & Associates, P.C., and for his Complaint for Declaratory Judgment and Damages against Defendant MERRIMACK MUTUAL FIRE INSURANCE CO. ("Merrimack" or "Defendant"), states the following:

## INTRODUCTION

1.　Plaintiff seeks declaratory relief and damages due to Merrimack's vexatious and unreasonable conduct in handling his insurance claim, which arose out of criminal trespass and vandalism resulting in damages to the Plaintiff's Rental Property located at 3653 S. Union Avenue, Chicago, Illinois 60609 (the "Rental Property"). The Rental Property was insured under a Dwelling Fire and Additional Coverages insurance policy issued by Merrimack (Policy No. FP 5514733, the "Policy"). The damage sustained to Plaintiff's Rental Property was a result of vandalism that, by the plain terms of the Policy, was a covered peril fully entitled to coverage. Merrimack does

not dispute that Plaintiff was entitled to coverage, and has made partial payment to Plaintiff. Notwithstanding, Merrimack has breached the Policy by (i) failing to pay the full replacement cost value of the damaged property and (ii) failing to reimburse Plaintiff for loss of rent as required by the Policy. Additionally, although Plaintiff promptly notified Merrimack of his loss, Merrimack, through its adjuster, has engaged in a series of delay tactics during the pendency of Plaintiff's claim; amounting to a vexatious and unreasonable refusal and delay in paying Plaintiff's claim. Accordingly, Plaintiff now brings claims for declaratory judgment, breach of contract, and violation of the Illinois Insurance Code, 215 ILCS 5/, *et seq.* (the "Code"), seeking to hold Merrimack accountable for its conduct in dealing with its customers/policy holders.

## PARTIES

2.      Plaintiff William Sullivan, trustee of the WST, is an Illinois citizen. WST is a Trust formed within the State of Illinois and is an Illinois citizen. Sullivan, in his capacity as trustee of WST, purchased the Policy insuring the Rental Property from Merrimack.

3.      Defendant, Merrimack, is a foreign Massachusetts insurance company authorized to do and/or doing business in the State of Illinois. Merrimack's headquarters are located at 95 Old River Road, Andover, Massachusetts 01810. Merrimack is a citizen of Massachusetts. Merrimack was at all times relevant herein, the insurer of the Rental Property.

## JURISDICTION AND VENUE

4.       This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a)(1), in that this is a civil action between citizens of Illinois and a citizen of Massachusetts, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.      Further, this Court has jurisdiction over this matter, pursuant to 28 U.S. Code § 2201 because an actual controversy exists which arose within the Northern District, Eastern

Division of Illinois.

## GENERAL ALLEGATIONS

6.       In or about mid-November of 2016, Plaintiff's Rental Property was unlawfully entered into and vandalized. Trespassers damaged the Rental Property. Specifically, trespassers spray-painted and caused physical damage to the entire interior of the Rental Property, including, but not limited to the walls, fixtures, appliances, windows and floors. As a direct result of said vandalism, Plaintiff suffered extensive damage to the interior of the Rental Property.

7.       The Policy Plaintiff purchased from Merrimack was in effect at the time the vandalism occurred.

8.       In regard to coverage for the damage in question, the relevant portion of Plaintiff's Policy for the Rental Property states as follows:

### PERILS INSURED AGAINST

**COVERAGE A – DWELLING and**
**COVERAGE B – OTHER STRUCTURES**

> We insure against risks of direct loss to property described in Coverages A and B only if that loss is a physical loss of property; however we not insure loss:
>
> ***
>
> 2. Caused by:
>
> ***
>
>     f. Vandalism and malicious mischief, theft or attempted theft if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;
>
> ***
>
> Under Items 1 and 2, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

*See* a true and accurate copy of WST's Policy attached hereto as Exhibit A at pg. 4 of the Dwelling Property 3 Special Form DP 00 03 07 88.

3

9.     The Policy further states that Merrimack will pay for the full replacement cost value ("RCV") of any damage to the Property caused by a Peril Insured Against:

**CONDITIONS**

5. **Loss Settlement**. Covered property losses are settled as follows:

*** 

**b.** Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following

***

(c) The necessary amount actually spent to repair or replace the damage property.

*See* Ex. A at pg. 7 of the Dwelling Property 3 Special Form DP 00 03 07 88.

10.     In regard to the loss of rents aspect of Plaintiff's claim, the relevant portion of Plaintiff's Policy for the Rental Property states as follows:

**COVERAGE D – Fair Rental Value**

If a loss to property described in Coverage A, B or C by a Peril Insured Against under this policy make that part of the Described Location rented to others or held for rental by you unfit for its normal use, we cover its:

**Fair Rental Value,** meaning the fair rental value of that part of the Described Location rented to others or held for rental by you less any expenses that do not continue while that part of the Described Location rented or held for rental is fit to live in.

*See* Ex. A at pg. 2 of the Dwelling Property 3 Special Form DP 00 03 07 88.

11.     Plaintiff fully complied with the terms of the Policy by promptly submitting his claim for loss sustained to his Rental Property to Merrimack under Coverages A-D.

12.     Merrimack did not and does not dispute that Plaintiff's Policy afforded coverage upon the Rental Property was in effect at the time the vandalism took place at the Rental Property.

13.     Merrimack did not and does not dispute that the loss Plaintiff sustained to his Rental

Property as a result of the vandalism is a "Peril Insured Against" (or "Insured Peril" herein) and entitled to coverage under the Policy.

14.     After acknowledging Plaintiff's claim, Merrimack hired third-party adjuster Kevin Young ("Young") of LJ Shaw and Company ("LJ Shaw") and other representatives to evaluate Plaintiff's losses to the Rental Property.

15.     On or about December 20, 2016, Young, at Merrimack's direction, informed Plaintiff that Merrimack estimated the RCV of Plaintiff's damaged Rental Property to be only $61,557.50. Merrimack, issued a check to Plaintiff in the amount of $34,747.78; Merrimack's estimate the actual case value ("ACV") (RCV less depreciation).

16.     Plaintiff requested bids from contractors to repair the damaged property. Plaintiff's prospective contractors concluded that Merrimack's estimated cost to repair Plaintiff's Rental Property was tremendously lower than the amount needed to repair and/or replace the affected walls, windows, floors, cabinets and fixtures in Plaintiff's Rental Property as a result of the damage caused by the vandals.

17.     Plaintiff's contractors placed bids to repair the damage in excess of $120,000.00; nearly double the amount of Merrimack's estimate. Young refused to discuss the bids with Plaintiff's contractors.

18.     Plaintiff advised Young it was having difficulty even hiring a contractor to begin repairs with the deficient initial ACV payment from Merrimack.

19.     Plaintiff further advised Young that delays in processing the claim were causing additional loss of rents. Young, in complete disregard of the plain language of the Policy, misrepresented to Plaintiff that he would not be entitled to loss of rent.

20.     Young then pressured Plaintiff to settle the claim, advising that his best course was

5

to accept the ACV payment and sell the Rental Property "As-Is."

21.     Plaintiff again disputed Young's interpretation.

22.     Rather than discuss Plaintiff's contractor's bids, Young informed Plaintiff that J.C. Restoration, Inc. – Merrimack's "building consultant" – would schedule an appointment to purportedly evaluate the property damage.

23.     Plaintiff, Young and an agent/representative of J.C. Restoration met at the Rental Property on or about February 2, 2017. Rather than truly evaluate the damage to the Rental Property, the J.C Restoration representative attempted to clean the damaged property with paint remover in the presence of both Young and Plaintiff; however, J.C. Restoration's representative was unable to remove the spray paint.

24.     Despite being unable to remove the paint, Young and/or Merrimack's adjusters and J.C. Restoration's representatives took the position, in writing, that the vast majority of damage sustained to Plaintiff's Rental Property could simply be cleaned with "the correct paint formula remover."

25.     J.C. Restoration then revised Merrimack's estimate of the RCV to $62,394.46, not even $1,000 above Merrimack's initial estimate. Plaintiff again disputed Merrimack's estimate.

26.     In or about February and March of 2017, and despite being fully aware Plaintiff was unable to rent the Rental Property due to the damage and still losing rent, Young instructed Plaintiff not to make any repairs until the Plaintiff and Merrimack were able to reach an agreement as to the RCV. Young then again pressured Plaintiff to sell the Property "As-Is."

27.     Plaintiff again disagreed with Young's assessment and hired an independent licensed public adjuster to evaluate the damage in March 2017.  Plaintiff's independent adjuster estimated the RCV of the damage to be a minimum of $110,318.47. Plaintiff provided this estimate

of the RCV of the damage sustained to the Rental Property to Young.

28.     Young refused to discuss the RVC of the damage with Plaintiff's retained and licensed adjuster.

29.     Plaintiff promptly hired an appraiser and informed Merrimack that he demanded an appraisal of the damage as provided in the Policy. *See* Ex. A at pg. 7, ¶8 of the Dwelling Property 3 Special Form DP 00 03 07 88.

30.     After being advised that Plaintiff demanded an appraisal of the loss pursuant to the Policy, Merrimack's representatives stated it would select an appraiser and notify Plaintiff of its selection.

31.     However, after several more weeks, and further delaying resolution of Plaintiff's claim under the Policy, Young informed Plaintiff that Merrimack would not engage in the appraisal process under the Policy until Plaintiff made a formal demand in writing. The Policy does not require a written demand. *See* Ex. A at pg. 7, ¶8 of the Dwelling Property 3 Special Form DP 00 03 07 88.

32.     Plaintiff sent a letter to Young on or about June 16, 2017 demanding an appraisal of the RVC of the damage.

33.     Merrimack waited multiple additional months before disclosing its appraiser.

34.     Merrimack's appraiser refused for months to select an umpire in good faith with Plaintiff's appraiser as required by the Policy, and the selection process stalled.

35.     During the pendency of the claim, Plaintiff hired a contractor to repair and replace the damaged property in an effort to mitigate his damages.

36.     Plaintiff paid $107,000.00 to his contractor for restoration, repair and replacement for damage to the Rental Property. Plaintiff also paid an additional $5,249.00 for appliances,

$6,112.20 on flooring and $650.00 on carpeting; for a total of $119,011.20.

37.     Repairs and restoration of the damaged Rental Property were not complete until mid-November 2017, a full year after the loss, due to Young and Merrimack's refusal to comply with the Policy in good faith, and Merrimack's vexatious and unreasonable delay in resolving the claim. Plaintiff was unable to rent out the Rental Property until repairs/replacements were complete.

38.     After completing the aforementioned repairs, restoration and replacements, Plaintiff retained counsel as a last effort to resolve his ongoing dispute with Merrimack without Court intervention.

39.     On or about February 5, 2018, Merrimack, through counsel, acknowledged that additional amounts may be owed under the replacement cost coverage of the Policy and requested documentation of the work performed and the costs incurred to repair the vandalism damage. Merrimack further requested documentation to support Plaintiff's loss of rents claim.

40.     As requested, on or about February 26 2018, Plaintiff submitted cancelled checks for repair invoices to Merrimack demonstrating that the work had been completed and Plaintiff had spent $119,011.20 in necessary repairs. Plaintiff also provided further documentation and evidence to support his loss of rents claim.

41.     In response, and despite being provided the requested documentation that Plaintiff paid $119,011.20 in necessary repairs, Merrimack has maintained the position that Plaintiff is still only entitled to under the Policy is the amount of J.C. Restoration's February 2017 RCV estimate of $62,394.46.

42.     Again, Merrimack maintained that Plaintiff was only entitled to $20,639.50 depreciation payment, raising Merrimack's total offer and payment to Plaintiff to date to be

$55,387.28; this is despite Plaintiff paying over double to repair the damage.

43.     Merrimack has received Plaintiff's loss of rent claim, but has failed and refuses to pay it.

44.     Merrimack effectively delayed paying Plaintiff's claim for well over one (1) year, with no intention of changing its position; regardless of documentation submitted by Plaintiff.

45.     Plaintiff accepted the additional payment of $20,639.50, without prejudice, and informed Merrimack that it had no choice but to file the instant action.

46.     By the plain language of the Policy, Plaintiff is entitled to an amount in excess of $102,023.92 – consisting of $63,623.92 for non-reimbursed out-of-pocket expenses and loss of rent to the full extent of the twelve (12) months available under the Policy in the amount of $38,400.00.

47.     Despite receiving substantial proof of out-of-pocket amounts paid by Plaintiff for necessary repairs, restoration and replacement, and having actual knowledge that Plaintiff was unable to rent the Rental Property, Merrimack has failed to and refuses to fully compensate Plaintiff for his losses.

48.     At all relevant times herein, Plaintiff has fully cooperated with Merrimack and otherwise complied with any and all obligations under the Policy.

<u>**COUNT I**</u>
**(Declaratory Judgment)**

49.     Plaintiff incorporates and realleges Paragraphs 1-48, inclusive as Paragraph 49, as if fully set forth herein.

50.     An actual controversy and *bona fide* dispute exists between Plaintiff, on the one hand and Merrimack on the other, and this Court is vested with the power to declare the rights and liabilities of the Parties hereto and to grant such relief as it deems necessary and proper.

51.     Specifically at dispute are the amounts owed for the repair and/or replacement of Plaintiff's Rental Property under the Dwelling and Other Structures sections of the Policy (Coverages A & B), and the amounts owed for the fair rental value of the Rental Property from the date of loss until repairs were complete in November 2017 under the Fair Rental Coverage section of the Policy (Coverage D). *See* Ex. A at pgs. 2, 4 & 7 of the Dwelling Property 3 Special Form DP 00 03 07 88.

52.     This Honorable Court should declare that Plaintiff is entitled to coverage for full restoration, replacement costs and loss of rents and as per the terms of the Policy. *See* Ex. A at pgs. 2, 4 & 7 of the Dwelling Property 3 Special Form DP 00 03 07 88

WHEREFORE, Plaintiff WILLIAM SULLIVAN, as trustee of the WILLIAM SULLIVAN TRUST 99, respectfully requests that this Honorable Court declare and adjudge the controversy as follows:

A. Declare that the Policy provides full insurance coverage for all replacement costs Plaintiff has incurred to restore the Rental Property;

B. Declare that the Policy provides for loss of fair rental value from November 2016 through November 2017, the period in which Plaintiff was unable to rent the Rental Property; and,

C. Grant any other relief that this Honorable Court deems just and equitable under circumstances, including the award of costs and reasonable attorneys' fees.

### COUNT II
**(Breach of Contract)**

53.     Plaintiff incorporates and realleges Paragraphs 1-52, inclusive as Paragraph 53, as if fully set forth herein.

54.     Plaintiff performed his duties under the Policy by *inter alia* promptly submitting his claim for loss of rents and property damage.

55.     Under the Coverage of Dwelling and Other Structures (Coverages A & B) section

10

in the Policy, Plaintiff is entitled to full replacement cost, which includes the necessary amount spent in repairing and restoring the Rental Property. *See* Ex. A at pg. 7 of the Dwelling Property 3 Special Form DP 00 03 07 88.

56. Under the Fair Rental Coverage Section of the Policy (Coverage D), as the Rental Property was held for rental as the time of loss, Plaintiff is entitled to fair rental value of the Rental Property from the date of loss until repairs were complete in November 2017. *See* Ex. A at pg. 2 of the Dwelling Property 3 Special Form DP 00 03 07 88.

57. Merrimack has breach its contract of insurance and, specifically, the Dwelling and Other Structures sections of the Policy (Coverages A & B) by failing to provide sufficient funds for the repair and/or replacement of Plaintiff's Rental Property in accordance with the terms of the Policy.

58. Merrimack has further breached its contract of insurance and, specifically, the Fair Rental Coverage Section of the Policy (Coverage D), by failing to acknowledge and provide sufficient funds for the actual Loss of Rental Value during the rehabilitation of the Rental Property.

59. Merrimack's aforesaid breaches of its contract of insurance and Coverages of the Dwelling and Other Structures and Fair Rental Sections of the Policy (Coverages A, B & D), directly and proximately caused Plaintiff to suffer actual damages, including but not limited to severe economic harm, in excess of $102,023.92 – consisting of $63,623.92 for non-reimbursed out-of-pocket expenses and loss of rent to the full extent of the twelve (12) months available under the Policy in the amount of $38,400.00.

WHEREFORE, Plaintiff WILLIAM SULLIVAN, as trustee of the WILLIAM SULLIVAN TRUST 99, respectfully requests that this Honorable Court enter judgment in his favor and against Defendant MERRIMACK MUTUAL FIRE INSURANCE CO. in an amount in

excess of $102,023.92 – consisting of $63,623.92 for non-reimbursed out-of-pocket expenses and loss of rent to the full extent of the twelve (12) months available under the Policy in the amount of $38,400.00 – reasonable costs, attorneys' fees, compensatory damages, punitive damages and any additional relief this Honorable Court deems reasonable and just.

## COUNT III
### (Violation of 215 ILCS §5/ *et seq.*)

60.     Plaintiff incorporates and realleges Paragraphs 1-59, inclusive as Paragraph 60, as if fully set forth herein.

61.     Due to Defendant's vexatious and unreasonable delay in settling Plaintiff's claim under the Policy, and pursuant to 215 ILCS §5/155, Plaintiff seeks recovery of taxable costs in the action, reasonable attorney fees, other costs and statutory damages. *See* ¶¶ 19-20, 26, 28, 31-34, 37, 44 & 47.

62.     Plaintiff initiated his claim under the Policy in November of 2016.

63.     Shortly thereafter, Plaintiff presented to Defendant the findings of his independent experts/appraisers that clearly established the extent of the damage sustained to Plaintiff's Rental Property, and sufficient documentation and proof that said damage was, in fact, irreparable and thus required necessary repairs, replacement and restoration.

64.     The acts and omissions of Merrimack's agents and/or representatives directly caused delays in repairs to and restoration of the Rental Property. Accordingly, Merrimack should be estopped from arguing repairs could have been completed sooner.

65.     To date, Merrimack refuses to pay for the full value of the replacement costs and loss of rent Plaintiff incurred as a result of the covered damage Plaintiff was entitled to under the Policy.

66.     Merrimack has demonstrated bad faith and improper claims practice as defined by

and set forth in Sections 154.5 and 154.6 of the Illinois Insurance Code in at least the following

ways:

    A. Knowingly misrepresenting to Plaintiff relevant facts of the Policy relating to loss of rents it is entitled to;

    B. Failing to promptly and regularly communicate with Plaintiff during the pendency of his claim under the Policy;

    C. Not attempting in good faith to effectuate prompt, fair and equitable settlement of Plaintiff's claim submitted under the Policy where liability has become reasonably clear;

    D. Attempting to pressure Plaintiff into settling his claim under the Policy for much lower than the damages sustained to Plaintiff's Rental Property;

    E. Forcing Plaintiff to initiate the instant action to secure and obtain his full rights under the Policy; and,

    F. Otherwise vexatiously and unreasonably delaying the resolution of Plaintiff's claim under the Policy in bad faith.

WHEREFORE, Plaintiff WILLIAM SULLIVAN, as trustee of the WILLIAM

SULLIVAN TRUST 99, respectfully requests that this Honorable Court enter judgment in his

favor and against Defendant MERRIMACK MUTUAL FIRE INSURANCE CO. as follows:

    A. Ordering Defendant to pay actual damages to Plaintiff for his unreimbursed, out-of-pocket expenses and loss of rent claim under the Policy in the amount of 102,023.92;

    B. Ordering Defendant to pay penalties for violating Sections 154.5 and 154.6 of the Illinois Insurance Code, 215 ILCS §5/154.5 & §5/154.6;

    C. Ordering Defendant to pay penalties, costs, reasonable attorneys' fees and other statutory damages available under Section 155 of the Illinois Insurance Code, 215 ILCS §5/155;

    D. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and,

    E.  Ordering such other and further relief this Honorable Court deems just and proper including the award of costs and reasonable attorneys' fees.

Dated: August 20, 2018              Respectfully submitted,

                         WILLIAM SULLIVAN, as trustee of the
                         WILLIAM SULLIVAN TRUST 99,
                         an Illinois Trust.

                         By: /s/ Steven M. Laduzinsky
                            One of his attorneys

Steven M. Laduzinsky (sladuzinsky@laduzinsky.com)
ARDC No. 6193407
Conor Sickel (csickel@laduzinsky.com)
ARDC No. 6313993
Laduzinsky & Associates, P.C.
216 S. Jefferson St., Suite 301
Chicago, IL 60661
(312) 424-0700